CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
FEB 06 2009
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| RHONDA C. HATCHETT, | CASE NO. 4:08CV00023 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | |

This challenge to a final decision of the Commissioner which denied plaintiff's October 23, 2003 claim for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the court is constrained to RECOMMEND that an Order enter GRANTING defendant's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision issued on May 16, 2006, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity at any relevant time, her alleged disability onset date was May 7, 2003, and she was insured for benefits through December 31, 2008[1]. (R. 15, 17.) The Law Judge determined plaintiff had the following severe impairments:

---

[1] In order to qualify for disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 20 C.F.R. § 404.131(a).

impairments affecting her lumbar spine, impairments affecting her cervical spine, impairments affecting her right shoulder, sleep apnea, and an impairment affecting her heart.[2] (R. 17.) It was further determined that these impairments, viewed alone or in combination, did not meet or equal a listed impairment. (*Id.*) The Law Judge believed that, although plaintiff's medically determinable impairments could be expected to produce the symptoms she alleged, her statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible. (R. 20.) The Law Judge found that plaintiff had the residual functional capacity ("RFC") to perform light exertional work which includes standing and walking for about four hours or less in an eight-hour day and sitting about six hours in an eight-hour day. (R. 18.) The Law Judge further found she could only occasionally bend, stoop, crouch, climb, kneel, or crawl. (*Id.*) Plaintiff has limited reaching ability with her right arm, and she cannot work under concentrated exposure to hazards such as heights or moving machinery. (*Id.*) The Law Judge concluded this RFC precluded plaintiff from performing her past relevant work ("PRW")[3], but that other jobs exist in significant numbers in the national economy that she could perform[4]. (R. 25-26.) Thus, the Law Judge ultimately found she was not disabled. (R. 27.)

Plaintiff appealed the Law Judge's May 16, 2006 decision to the Appeals Council. (R. 5-7.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to

---

[2] The Law Judge noted that, although plaintiff has been prescribed an antidepressant, she did not suffer a severe mental impairment. (R. 17.)

[3] Plaintiff's PRW consists of work as a Deputy Sheriff, Loss Prevention Officer, Machine Operator, and Department Manager. (R. 25.)

[4] The Law Judge noted that the vocational expert ("VE") testified that jobs as a surveillance officer or security monitor were representative of positions found in significant numbers in the national economy that someone with plaintiff's RFC could perform. (R. 26)

Case 4:08-cv-00023-JLK-BWC   Document 14   Filed 02/06/09   Page 2 of 10   Pageid#: 59

review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 5-6.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The Regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In a brief filed in support of her motion for summary judgment, plaintiff initially argues that the Law Judge erred by failing to accord "greater weight" to the opinion of her treating physician, James Isernia, M.D. (Pl's Brief, pp. 14-16.) Plaintiff contends that Dr. Isernia's opinion that she is precluded from engaging in any type of employment is not conclusory and is well supported by the medical evidence, which reveals that she suffers from severe cervical and lumbar degenerative disc disease and rotator cuff tendonitis, bursitis and impingement. (Pl's Brief, p. 15.)

Under the Regulations and applicable circuit decisional authority, a Law Judge and the Commissioner must consider the following in evaluating and weighing medical opinions: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart,*

3

453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005)).

It is a well-established general principle that the evidence of a treating doctor should be accorded greater weight. *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992). When that physician's opinion is not supported by the objective medical evidence or is inconsistent with other substantial evidence, it may be given "significantly less weight." *Craig,* 76 F.3d at 590. Moreover, where the evidence is such that reasonable minds could differ as to whether the claimant is disabled, the decision falls to the Law Judge, and ultimately to the Commissioner, to resolve the inconsistencies in the evidence. *Johnson,* 434 F.3d at 653; *Craig,* 76 F.3d at 589. In fact, the Regulations require the Commissioner to "give good reasons" for any decision on the weight he gives to a treating doctor's evidence. 20 C.F.R. § 404.1527(d)(2).

In assessing the medical opinions, the Law Judge gave "greater weight" to the opinions of the consultative examining physician Paul Lance Walker, D.O.[5] and the record reviewing physician Robert R. Chaplin, Jr., M.D. (R. 25.) The Law Judge elected to discount Dr. Isernia's evidence on the ground that he is a family practitioner, not a specialist in the relevant area of medicine. (*Id.*)

Dr. Walker, a physician with Virginia Department of Rehabilitative Services, examined plaintiff once on October 23, 2004. (R. 252-257.) He opined that plaintiff suffered chronic back pain with degenerative disc disease, shoulder pain with chronic inflammatory changes, and

---

[5] A Doctor of Osteopathy (D.O.) does not possess a Medical Doctor (M.D.) degree, but has been given parity in the states to engage in practice similar to a general practitioner treating the "whole person," with an emphasis on the alignment and manipulation of the musculoskeletal system, much like a chiropractor. *See* http://www.medterms.com, Definition of Osteopathy. Unlike a chiropractor, however, a D.O. is an "acceptable medical source" under the Regulations and may provide medical evidence which establishes an impairment. *See* 20 C.F.R. § 404.1513.

4

cervical disc disease. (R. 256.) In assessing plaintiff's RFC, he found that her back pain limited her to standing and walking four hours or less in an eight-hour workday and sitting up to six hours in an eight-hour workday. (R. 256-257.) Dr. Walker further found that plaintiff was able to lift and carry ten pounds frequently and twenty pounds occasionally. (R. 257.) Dr. Walker determined that plaintiff had no manipulative limitations, other than some weakness in her right deltoid. (*Id.*) Finally, Dr. Walker noted that plaintiff was taking pain medications which would "place her at risk in a safety sensitive type job." (*Id.*)

A State agency record reviewing physician, Dr. Chaplin, evaluated plaintiff's medical records on December 2, 2004, and he gave "great weight" to Dr. Walker's assessment. (R. 325.) Dr. Chaplin opined that plaintiff was limited essentially to performing light exertional work. (R. 319.)

J. Astruc, M.D. conducted a State Agency record review on March 19, 2004. (R. 202-209.) He opined that plaintiff could perform sedentary exertional work, and that she could stand and/or walk at least two hours in an eight-hour workday and that she could sit, with normal breaks, about six hours in an eight-hour workday. (R. 203.) Finally, Dr. Astruc found that plaintiff's ability to reach overhead with her right upper extremity was limited from 1-30%. (*Id.*)

Dr. Isernia was plaintiff's primary treating source from November 24, 1999 through at least May 17, 2005. (R. 134-148, 326-345.) In forms completed and submitted on plaintiff's behalf, Dr. Isernia opined that plaintiff suffered moderately severe pain, the effects of which frequently interfered with her ability to maintain attention and concentration to sufficiently complete tasks on time or to reliably attend work. (R. 326.) He also noted that, if plaintiff returned to repetitive work activity which allowed for a sit/stand option, nevertheless, she would

5

need complete freedom both to rest frequently without restriction and to lie down or rest for substantial periods of time during the workday. (R. 327.) Dr. Isernia opined that plaintiff's severe degenerative disc disease functionally limited her to lifting/carrying ten pounds occasionally and five pounds frequently; standing/walking two hours in an eight-hour workday; and sitting five hours in an eight-hour workday. (R. 328.) The physician also believed the limitations on her ability to reach, handle, feel and push/pull were so severe that she "can't function as she should in any work capacity." (R. 329.)

There also is objective medical and opinion evidence in the record offered by an orthopaedic specialist, J. Wayne Keeling, M.D. (R. 371-374.) Dr. Keeling examined plaintiff on April 18, 2005 and noted her history since receiving a job injury on March 10, 2002. (R. 371.) Dr. Keeling further noted that she retired in May of 2003, and he opined that plaintiff could not perform the duties of her past relevant work as a sheriff or jailer. (R. 373-374.) The physician further opined that "[h]er physical restrictions are permanent related to her low back pain. The low back pain prohibits her from a gainful occupation at this time." (R. 374.) Moreover, Dr. Keeling did not believe any "accommodations" could be made for her return to work, and that her low back pain limited her "activities significantly." (*Id.*)

It is apparent that Dr. Keeling reached his conclusions by fully crediting plaintiff's subjective complaints. (R. 371-372.) Yet, Dr. Keeling noted that her symptoms improved with medication, and his physical examination produced "normal" and "negative" findings essentially at each level of the examination. (R. 373.)

If the Law Judge's decision to discount Dr. Isernia's evidence was based on the evidence submitted by the State Agency record reviews, the undersigned could not find such decision to be

6

supported by substantial evidence. While an osteopath is an acceptable medical source under the Regulations, and functions much like a general practitioner, in treating musculoskeletal impairments, such physician appears to be but a notch above an chiropractor, who is not considered an acceptable medical source under the Regulations. Thus, the undersigned would have great difficulty finding that Dr. Walker qualified to bring such an expertise to the assessment of plaintiff's musculoskeletal that his evidence would override that of plaintiff's long-term treating doctor. Dr. Actruc, a State Agency record reviewer, offered no additional objective data to support the Law Judge's decision to discount the evidence of Dr. Isernia. In fact, Dr. Astruc offered an opinion that was more favorable to the plaintiff, limiting her to sedentary rather than light work. Thus, the State Agency record review evidence lacked the ingredients to establish a "good reason" to discount that of plaintiff's treating doctor.

By the same token, and despite the fact he only saw the plaintiff only once, nearly a year and a half year prior to the Law Judge's decision, Dr. Walker presents objective orthopaedic information that puts at issue the weight a fact finder might accord Dr. Isernia's opinion concerning the disabling effects of plaintiff's musculoskeletal impairment. Here again, the examining physician reports the results of his objective neurological and range of motion examination essentially as "normal," with only slight limitations due to pain noted. (R. 255-256.) In other words, these objective examinations revealed virtually no impairments. Dr. Walker's functional assessment certainly would allow one to conclude that plaintiff could perform of a range of both light and sedentary work, again with essentially no limitations except that produced by the pain plaintiff said she experienced. The only caveat raised by Dr. Walker was that plaintiff's medication placed her at "risk in a safety sensitive type job." (R. 257.)

7

At bottom, the medical evidence in the record as a whole was in conflict, the resolution of which was for the Commissioner. While the undersigned may not have resolved the conflicts the same way the Law Judge resolved them, and while the undersigned could not find that the evidence produced by the State Agency record review supported the Law Judge's resolution of those conflicts, there is other substantial evidence in the record to support the Commissioner's final decision.

Next, plaintiff argues that the VE's testimony is inconsistent with and conflicts with the provisions of the Dictionary of Occupational Titles ("DOT"). (Pl's Brief, pp. 16-18.) Specifically, plaintiff contends that VE testified she had skills which would transfer to the position of surveillance officer/security monitor; however, the position under the DOT is an *unskilled* position. (Pl's Brief, p. 17.) Plaintiff believes that this conflict in the VE's testimony violated Social Security Rule 00-4p because it pitted the VE's testimony against provisions of the DOT. (*Id.*) Thus, plaintiff offers that the Law Judge's conclusion that other jobs exist in the national economy that she can perform is not supported by substantial evidence. (Pl's Brief, p. 18.)

The VE testified that plaintiff's PRW as a deputy sheriff was skilled, and that the type of skills generally acquired in police and corrections work normally were transferrable to security work. (R. 407.) The VE opined that plaintiff's skills, therefore, would be transferrable to work as a surveillance officer or a security monitor. (R. 408.) He further testified that work as a security monitor was semi-skilled, and that there are over 50,000 security monitors in the national economy and over a thousand of those positions are located in Virginia. (*Id.*)

The VE further explained that his testimony was consistent with the definitions set forth

in the DOT, which testimony plaintiff did not challenge at the hearing. (*Id.*)

In any event, the VE revealed that plaintiff had performed work requiring skills greater than those required for the jobs he identified. It is difficult for the undersigned to find legal error in the VE's opinion that jobs requiring less skill would be available to a person possessing greater skill. There is nothing in the Regulations suggesting that a claimant's skill level can over qualify the person for a job to the extent it renders the job unavailable.

Finally, plaintiff contends that the Law Judge erred in his application of the Medical-Vocational Guidelines ("grids"). (Pl's Brief, p. 18.) Plaintiff argues that the Law Judge found that she was limited to sedentary work, but that he applied Rule 202.15, which is applicable to light exertional work, in reaching his decision adverse to her. (*Id.*)

It is clear from the context of the decision as a whole that the reference to sedentary work in Finding 10 on page 37 of the Law Judge's decision (R. 27), is a clerical error. In Finding 9, the Law Judge determined that, based on the VE's testimony, the skills acquired in plaintiff's past relevant work would transfer to both light and sedentary work. (R. 26.) In addition, the Law Judge clearly articulates that he was referring to the grids as a framework in that plaintiff would not be able to perform a full range of work in the light work category. (R. 26-27.) The VE, in the main, was asked to assess vocational factors within the light work category, and the testimony that followed the assessment formed a substantial evidentiary basis for the Law Judge's determination that plaintiff was not disabled at the final sequential level.[6]

---

[6]As noted, the Law Judge found that plaintiff's RFC limited her to less than a full range of light exertional work. The record reveals that plaintiff was fifty-one years old at the time of her hearing, was a high school graduate with an associate's degree in criminal justice, and her past relevant work was skilled and semi-skilled. (R. 405-406.) Thus, the Law Judge did not err in finding plaintiff was not disabled under Grid Rule 202.15 as a framework where the vocational

9

Case 4:08-cv-00023-JLK-BWC  Document 14  Filed 02/06/09  Page 9 of 10  Pageid#: 66

For all these reasons, it is RECOMMENDED the court enter an Order GRANTING defendant's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this action from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

2-6-2009
Date

---

evidence also demonstrated that jobs were available to her.