IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| RHONDA C. HATCHETT, | ) | |
| | ) | Case No. 4:08CV00023 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |
| | ) | |

Before me is the Report and Recommendation of the United States Magistrate Judge
recommending that the Defendant's Motion for Summary Judgment be granted and the
Commissioner's final decision be affirmed. The Plaintiff filed objections to the Magistrate's
Report and Recommendation. I have reviewed the Magistrate Judge's recommendation,
Plaintiff's objections, and relevant portions of the record. The matter is now ripe for decision.
For the reasons stated below, I will **ADOPT** the Magistrate's Report and Recommendation and
**GRANT** the Defendant's Motion for Summary Judgment. I **AFFIRM** the Commissioner's final
decision and **DISMISS** this case from the docket of this Court.

I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Rhonda C. Hatchett ("Plaintiff") filed a Title II application for a period of
disability and disability insurance benefits ("DIB") under the Social Security Act on October 22,
2003. (R. 63-65.) In her application, Plaintiff alleges a disability onset date of May 7, 2003, due
to injuries to her lower back and right shoulder. (R. 63, 97.) The state agency denied her claim
for disability benefits initially on March 23, 2004, and upon reconsideration on December 6,
2004. (R. 30-39.) Plaintiff timely requested a hearing before an administrative law judge

1

("ALJ") on December 14, 2004.  (R. 40.)  The ALJ conducted a hearing on December 13, 2005 at which Plaintiff testified while represented by counsel.  (R. 15, 387.)  A vocational expert ("VE") was also present and testified at Plaintiff's hearing before the ALJ.  (*Id.*)

In a decision issued on May 16, 2006, the ALJ denied Plaintiff's claims for DIB, finding that Plaintiff could perform other sedentary, semi-skilled work in the national economy and that she was not disabled within the meaning of the Social Security Act.  (R. 15-27.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time and her alleged disability onset date was May 7, 2003.  (R. 15, 17.)  The ALJ also concluded that Plaintiff was insured for benefits through December 31, 2008.  (R. 15.)  The ALJ determined that Plaintiff had the following severe impairments: impairments affecting her lumbar spine, impairments affecting her cervical spine, impairments affecting her right shoulder, sleep apnea, and an impairment affecting her heart.[1]  (R. 17.)  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)  Furthermore, the ALJ determined that although Plaintiff's medically determinable impairments could be expected to produce the symptoms she alleged, her statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible.  (R. 20.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light exertional work which includes standing and walking about four hours or less in an eight-hour day and sitting about six hours in an eight-hour day.[2]  (R. 18.)  The ALJ also concluded that Plaintiff can sit about six hours in an eight-hour day and can only occasionally bend, stoop, crouch, climb, kneel, or crawl.  (*Id.*)  She also has limited reaching ability with her right arm and

---

[1] The ALJ noted that Plaintiff did not suffer a severe mental impairment.  (R. 17.)
[2] Plaintiff testified at the December 13, 2005 hearing that she has an Associate's Degree in Criminal Justice and she

she cannot work under concentrated exposure to hazards such as heights or moving machinery. (*Id.*) The ALJ ultimately concluded that Plaintiff's RFC precludes her from performing her past relevant work ("PRW"), but that other jobs exist in significant numbers in the national economy that she could perform.[3] (R. 26.)

Plaintiff followed the administrative procedures and appealed the ALJ's decision to the Appeals Council, which denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. 5-7, 11.) At this point, the Commissioner's decision became final, and Plaintiff filed this action in the United States District Court for the Western District of Virginia on July 9, 2008. This case was assigned to Magistrate Judge B. Waugh Crigler, who issued his Report and Recommendation on February 6, 2009, after considering motions for summary judgment filed by both parties. Magistrate Judge Crigler recommended that Defendant's Motion for Summary Judgment be granted and the Commissioner's final decision be affirmed, on the grounds that the medical evidence in the record as a whole was in conflict, the resolution of which was for the Commissioner. The Magistrate Judge also found that the VE did not error in concluding that jobs requiring less skill would be available to a person possessing greater skill and a claimant's skill level cannot over qualify a claimant for a job to the extent it renders the job unavailable. The Magistrate Judge also concluded that the reference to "sedentary work" in Finding 10 of the ALJ's decision was a clerical error and that the ALJ correctly applied the Medical-Vocational Guidelines.

Plaintiff timely filed her objections to the Magistrate Judge's recommendation, arguing that the ALJ erroneously applied the Medical-Vocational Guidelines and that the ALJ's decision

---

is 5 feet 6 inches tall and weighs 220 pounds. (R. 18.)
[3] Plaintiff was born on December 14, 1954 and was forty-eight years old on her alleged disability onset date. (R.

as a whole confirms that the ALJ found the Plaintiff was limited to sedentary level work. The Plaintiff also contends that the ALJ erred in giving greater weight to the opinions of the consultative examining physician instead of the opinions of the Plaintiff's treating physician and that the Magistrate Judge erred in concluding that there was no legal error with regard to the VE's testimony concerning the applicable skill level of a surveillance officer/security monitor.

## II.     STANDARD OF REVIEW

Congress has limited judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404.1545; *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527 and 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the

---

26.) Plaintiff's past relevant work consists of work as a Deputy Sheriff, a Loss Prevention Officer, a Machine Operator, and a Department Manager.  (R. 25.)

4

Commissioner's final decision.  *Laws*, 368 F.2d at 642.

## III.  <u>DISCUSSION</u>

Plaintiff argues that the ALJ erred by failing to accord greater weight to the opinion of her treating physician, Dr. James Isernia, M.D.  Plaintiff also contends that the VE's testimony is inconsistent with and conflicts with the provisions of the Dictionary of Occupational Titles ("DOT").  Plaintiff also submits that the ALJ erred in his application of the Medical-Vocational Guidelines by finding that she was limited to sedentary work, but then applying Rule 202.15, which is applicable to the light exertional work category, in reaching his decision.  The Defendant counters that the ALJ's finding that Plaintiff can perform a range of sedentary work is supported by Plaintiff's activities and the medical evidence.  The Defendant also argues that under the Medical-Vocational Guidelines, Plaintiff is not disabled because she has transferable skills.  Finally, Defendant argues that a vocational expert, upon considering Plaintiff's limitations, was able to identify sedentary, semi-skilled work in the national economy that Plaintiff could perform.  Thus, the ALJ correctly concluded that the Plaintiff is not disabled.

As the standard of review requires, I am precluded from judging the evidence in this case in the way a finder of fact would, and instead must review the record before this Court and determine whether substantial evidence supports the decision of the Commissioner.  For the reasons given here, I will adopt the Report and Recommendation of Magistrate Judge Crigler.  I find that substantial evidence supports the ALJ's decision to discount Dr. Isernia's evidence on the grounds he is not a specialist in the relevant area of medicine and his opinion is inconsistent with other medical evidence of record.  I also agree with the Magistrate's finding that the VE properly concluded that Plaintiff's PRW as a deputy sheriff was skilled, and those skills would be transferable to work as a surveillance officer or security monitor.  Finally, I find that the

5

ALJ's decision, as well as relevant parts of the record, support the notion that the ALJ found that Plaintiff was limited to the light work strength category. Thus, the ALJ properly applied the Medical-Vocational Guidelines in reaching his decision.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. *See Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527 and 416.927. The ALJ's credibility determinations are entitled to great weight. *Shively*, 739 F.2d at 989. In reviewing the record for substantial evidence, the court must not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

The Fourth Circuit has established that the Commissioner must consider the following in evaluating medical opinions: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). It is also well-established that the evidence of a treating doctor should generally be given greater weight. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, the treating physician's opinion should be given "significantly less weight" when that opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence. *See Craig*, 76 F.3d at 590. When the evidence is such that reasonable minds could differ as to whether the claimant is disabled, the decision falls to the ALJ to resolve the inconsistencies in the evidence. *See Johnson*, 434 F.3d at 653.

6

The ALJ gave greater weight to the opinions of consultative examining physician, Dr. Paul Lance Walker, D.O., and the record reviewing physician, Robert R. Chaplin, Jr., M.D.[4] (R. 25.) The ALJ noted that with regard to the opinion of Plaintiff's treating physician Dr. Isernia, he is a family practitioner and not a specialist with expertise in the pertinent areas. (*Id.*) The ALJ ultimately concluded that the Plaintiff had the limitations found by combining the maximum limitations expressed by Dr. Walker with the maximum limitations expressed by the record reviewing physician.

Dr. Walker conducted a consultative physical examination on October 23, 2004. He diagnosed chronic back pain with degenerative disk disease, shoulder pain with chronic inflammatory changes, and cervical disk disease. (R. 23.) In terms of the Plaintiff's function, he found that standing and walking should be four hours or less in an eight-hour workday secondary to back pain and she should be able to sit up to six hours in an eight-hour workday. (R. 23-24.) He indicated that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. (R. 24.) Dr. Walker noted that Plaintiff had no postural limitations and no manipulative limitations, other than some weakness in the right deltoid with about four to five strength in that muscle group. (*Id.*)

Dr. Chaplin, a State Agency record reviewing physician, reviewed Plaintiff's medical records on December 2, 2004. Dr. Chaplin found that based on the evidence of record, the claimant's statements regarding function were "partially credible." (R. 324.) Dr. Chaplin gave great weight to the report submitted by Dr. Walker and stated that Dr. Walker's opinion is

---

[4] Although Dr. Walker does not possess a Medical Doctor (M.D.) degree, a Doctor of Osteopathy (D.O.) is an "acceptable medical source" under the Regulations and may provide evidence which establishes an impairment. *See* 20 C.F.R. § 404.1513.

7

generally consistent with his own RFC determination. Dr. Chaplin's assessment was consistent with the finding that Plaintiff was limited to performing light exertional work.[5]

Dr. Isernia, Plaintiff's treating family physician, completed several forms supplied to him by the Plaintiff's representative prior to Plaintiff's hearing before the ALJ. (R. 24.) Dr. Isernia indicated that Plaintiff suffered moderately severe pain, the effects of which frequently interfered with her ability to maintain attention and concentration in order to sufficiently complete tasks in a timely manner or maintain reliable attendance in a work setting. (R. 24, 326.) He also noted that Plaintiff would not have adequate rest even with 20 minutes of rest per hour and required complete freedom to rest frequently without restriction. Dr. Isernia opined that Plaintiff's severe degenerative disc disease functionally limited her to lifting/carrying ten pounds occasionally and five pounds frequently; standing/walking two hours in an eight-hour day; and sitting five hours in an eight-hour day. (R. 24.) Dr. Isernia's ultimately concluded that the limitations on Plaintiff's physical abilities to reach, handle, and feel were so severe that she "can't function as she should in any work capacity." (R. 329.) Dr. Isernia based his assessment on a MRI and X-rays. (*Id.*)

There is also medical evidence by an orthopedic surgeon, Dr. J. Wayne Keeling, M.D. (R. 371-74.) Dr. Keeling examined the Plaintiff and noted that she could not perform the duties of her past relevant work as a sheriff or jailer. He stated that Plaintiff's lower back pain "prohibits her from a gainful occupation at this time." (R. 374.) Dr. Keeling noted that he did not think any accommodations could be made for Plaintiff's return to work because of her lower back pain. (*Id.*) However, he opined that her symptoms improved with medication, and his

---

[5] J. Astruc, M.D. also conducted a State Agency record review on March 19, 2004. (R. 202-09.) He noted that Plaintiff could perform sedentary exertional work, and that she could stand and walk at least two hours in an eight-

8

physical examination produced normal and negative findings essentially at each level of the examination.  (R. 373.)

It is clear that there is conflicting medical evidence regarding the disabling effects of Plaintiff's musculoskeletal impairment.[6]  The resolution of such conflicts in the record, however, is ultimately reserved for the ALJ and the Commissioner.[7]  Dr. Walker's report presents objective information that contradicts Dr. Isernia's conclusions regarding the functional effects of Plaintiff's disability.  Dr. Walker noted that his objective neurological and range of motion examinations of the Plaintiff revealed virtually no impairments.  His functional assessment, combined with the findings of Dr. Chaplin, certainly qualifies as evidence that a reasonable mind would accept as adequate to support the ALJ's conclusion that Plaintiff could perform work at the light and sedentary exertion levels.  I therefore conclude that there is substantial evidence in the record to support the Commissioner's final decision to discount the opinion of the Plaintiff's treating family physician.

Plaintiff also argues that the VE's testimony is inconsistent with the provisions of the DOT.  Plaintiff contends that the VE testified that she had skills which would transfer to the position of "surveillance officer or a security monitor."  Plaintiff argues that the position of security monitor is not listed in the DOT and that the ALJ did not properly resolve the conflict

---

hour day and she could sit, with normal breaks, about six hours in an eight-hour workday.  (R. 203.)

[6] Indeed, the opinions and data offered by Drs. Keeling and Astruc do not support the ALJ's decision to discount the evidence of Dr. Isernia.  However, the Commissioner is charged with evaluating the medical evidence and is given discretion to resolve conflicts or inconsistencies in the evidence.  *See Craig*, 76 F.3d at 585.  After considering the relevant portions of the record, I find that substantial evidence supports the Commissioner's resolution of the conflicts of evidence concerning the disabling effects of Plaintiff's impairment.

[7] Plaintiff's Objections to the Magistrate's Recommendation assert that Dr. Isernia was in the best position to assess the Plaintiff's residual functional limitations as Plaintiff's long-standing treating physician and that the ALJ erred in failing to give greater weight to his opinions.  (Objections to the Report and Recommendation 5.)  However, it is the ALJ that evaluates and resolves conflicts in the objective medical evidence.  This Court must affirm the Commissioner's decision when it's supported by substantial evidence.  *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

between the VE's testimony and the DOT as required by Social Security Ruling 00-4p.  In her

Objections to the Magistrate Judge's Recommendation, Plaintiff asserts that even if the VE

meant to refer to the position of "surveillance system monitor," a listed position in the DOT, this

position is an unskilled position.[8]  Plaintiff contends that under Social Security Regulation 82-

41, skills cannot be transferred to unskilled work; therefore, the VE erred in testifying the

Plaintiff had transferable skills.

The VE testified that Plaintiff's PRW as a deputy sheriff was skilled, and her skills were

transferable to security work at both the light and sedentary exertional levels.  (R. 407.)  Thus,

her skills as a deputy sheriff would be transferable to work as "a surveillance officer or a security

monitor."  (R. 408.)  The VE also testified that work as a security monitor was semi-skilled and

that there are over 50,000 security monitors in the national economy and over a thousand located

in the Commonwealth of Virginia.  (R. 408.)

The ALJ explicitly asked the VE if his testimony was consistent with the DOT.  The VE

testified that his analysis was consistent with the definitions set forth in the DOT.  (R. 408.)

Plaintiff did not challenge the VE's response to the ALJ's inquiry at the December 13, 2005

hearing.  (*Id.*)  Thus, the ALJ fulfilled his duty to develop the record and resolve any apparent

conflicts between the VE's testimony and the DOT.  It is also clear from the testimony that the

VE's intention was to refer to a semi-skilled security position, one which Plaintiff's skills as a

deputy sheriff were readily transferable.  Although the VE may not have gotten the exact job title

---

[8] There are other jobs in the DOT, however, that fit security work job criteria with a Specific Vocational Preparation ("SVP") of 3 or more.  For example, the title "merchant patroller" has an alternate title of "security guard" and involves, among other things, "patrol[ling] assigned territory to protect persons or property."  DICOT 372.667-038, 1991 WL 673101.  It has an SVP of 3 requiring over 1 month and up to 3 months of training for average job performance.  *Id.*; *see* 20 C.F.R. § 404.1568(b) (defining semi-skilled work as jobs that may require "tending or guarding equipment, property, materials, or persons against loss, damage or injury).  This indicates there are a range of security-type positions that can qualify as semi-skilled or sedentary depending on the exact position.

10

correct pursuant to the DOT, he revealed that Plaintiff performed past work requiring skills greater than those required for the jobs he identified. Thus, her skills were transferable to security work requiring less skill than her PRW as a deputy sheriff. I find that there is no legal error with regard to the VE's testimony and the ALJ's conclusion that other jobs exist in significant numbers that can be performed by the Plaintiff is supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred in his application of the Medical-Vocational Guidelines. Plaintiff argues that the ALJ found that she was limited to sedentary work, but then applied Medical-Vocational Guideline 202.15, which is applicable to the light exertional work category. Plaintiff claims that the ALJ should have applied Medical-Vocational Guideline 201.14, which directs a finding of disabled.

The ALJ found that based on the VE's testimony, the skills acquired in the Plaintiff's PRW would transfer to both light and sedentary work. (R. 26.) The ALJ's decision stated that the Plaintiff could stand and walk about four hours or less in an eight-hour day and sit about six hours in an eight-hour day. (R. 18.) The Magistrate Judge concluded that it was clear from the context of the ALJ's decision as a whole that the reference to sedentary work in Finding 10 was a clerical error. (R. 27.) The Magistrate Judge opined in his Report that the ALJ referred to the Medical-Vocational Guidelines as a framework and that Plaintiff would not be able to perform a full range of work at the light and sedentary exertion levels. (R. 26-27.) In Plaintiff's objections to the Magistrate Judge's Report, Plaintiff argues that given the ALJ's questions to the VE at the hearing and the VE's testimony that Plaintiff was limited to sedentary work, the ALJ clearly found that Plaintiff was limited to sedentary work. However, the record shows that the VE was asked to assess vocational factors within the light work category, and the testimony that followed supports the notion that Plaintiff could perform work in the light work category.

11

Plaintiff's argument that the ALJ applied the wrong Medical-Vocational Guideline depends on the assumption that the ALJ found that Plaintiff was limited to "sedentary" work. I agree with the Magistrate Judge's finding that the reference to "sedentary work" in Finding 10 of the ALJ's decision is a clerical error. (R. 27.) Granted, there is a back and forth between "light" and "sedentary" in both the ALJ's decision and the VE's testimony. However, the ALJ used Medical-Vocational Guideline 202.15 as a framework since the evidence demonstrated that jobs were available to Plaintiff in the light exertional work category that she could perform. I find no error in the ALJ's conclusion that although Plaintiff's functional limitations do not allow her to perform a full range of work at her given level of exertion, a finding of "not disabled" is appropriate under Guideline 202.15 given Plaintiff's age, education and transferable work skills.

Given the ALJ's finding that Plaintiff's PRW would transfer to both light and sedentary work, the ALJ's finding that Plaintiff could stand and walk about four hours or less in an eight-hour day and lift 20 pounds occasionally and 10 pounds frequently, and the ALJ's explicit acknowledgement that Plaintiff would not be able to perform a full range of work in the light work category, I conclude that the ALJ correctly applied Medical-Vocational Guideline 202.15 in reaching his decision that Plaintiff is not disabled.

IV.  **CONCLUSION**

For the reasons stated above, I will **ADOPT** the Magistrate Judge's Report and Recommendation and **DENY** the Plaintiff's objections. I will **GRANT** the Defendant's Motion for Summary Judgment and **AFFIRM** the Commissioner's final decision. This case shall be **DISMISSED** from the active docket of this Court.

12

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying

Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 17th day of April, 2009.

s/Jackson L. Kiser
Senior United States District Judge